**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TAZA SYSTEMS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   2:11cv073 |
| | )   **Electronic Filing** |
| TAZA 21 CO., LLC, FRANK A. | ) |
| ABRAHAM, ET AL., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION

September 13, 2013

      This is a service mark infringement action. Plaintiff Taza Systems, LLC ("Taza Systems") accuses defendant, Taza21 Company ("Taza21") of infringing three of its federally registered service marks. In turn, Taza21 contends that it is not infringing Taza Systems' registered service marks, and alternatively, that the registrations are subject to cancellation for various reasons.

      Taza Systems has filed a motion for summary judgment on the liability portion of its infringement claim and on Taza21's counterclaims seeking cancellation of the registrations [doc. no. 71]. In addition, Taza Systems has filed a motion in limine to exclude the expert report and testimony of Matthew Pritchard, Esq. [doc. no. 69], and a motion to strike certain exhibits attached by Taza21 to its opposition to the summary judgment motion [doc. no. 95].

      As explained in more detail below, we grant Taza Systems' summary judgment motion as to Taza21's counterclaims, but deny it as to the claim for infringement. We also deny its motion to strike Taza21's exhibits for the reasons set forth below. Finally, Taza Systems' motion in limine to exclude Mr. Pritchard's expert report is both moot and premature, and will be

denied on that ground alone, without prejudice to Taza System's ability to raise its objections in accordance with the Court's Pre-Trial scheduling order if appropriate.


I.       FACTUAL BACKGROUND

The following material facts are not in dispute, unless otherwise indicated. Additional facts will be discussed in context throughout this opinion where appropriate.

A.      Undisputed Facts Common to All Claims and Counterclaims

Taza Systems is the owner of three registrations on the principal register of the United States Patent and Trademark Office: (1) Reg. No. 3,439,240 for the word mark TAZA for restaurant and bar services in class 43; (2) Reg. No. 3,213,261 for the word mark TAZA A LEBANESE GRILL for restaurant and bar services in class 43; and (3) Reg. No. 3,213,262 for the design mark TAZA A LEBANESE GRILL for restaurant and bar services in class 43. [doc. no. 74, Ex. A, B, and C].  Because the registrations indicate that the marks are being used to identify services, instead of goods or products, they are referred to as service marks, instead of trademarks.   However, the two terms and the applicable law are generally interchangeable, unless otherwise noted in this opinion.  All three registrations state that "the English translation of taza is fresh" and claim a first use in commerce date of November 22, 2005. [Id.].  The last two registrations disclaim the exclusive right to use the phrase "Lebanese grill" separate and apart from the mark as a whole.  [Id. at Ex. B and C].

Taza Systems, which is headquartered in Ohio, operates two restaurants under these registered service marks. [doc. no. 74, Ex. F at ¶ 4].   The first restaurant opened in November of 2005 in Woodmere, Ohio, an eastern suburb of Cleveland. [Id.].   The second restaurant opened in October of 2011 in downtown Cleveland, Ohio. [Id.].

In July of 2008 Taza21 opened a restaurant in the Squirrel Hill business district of Pittsburgh, Pennsylvania under the names TAZA21, TAZA21 FRESH, and TAZA21 FRESH SHAWARMA CAFÉ, and designs including the same. [doc. no. 84-4 at pg. 8; doc. no. 86 at ¶¶ 19, 24; doc. no. 26 at ¶¶ 10-12]. Taza21 also operated a restaurant under these names in the Ross Park Mall in a suburb of Pittsburgh, Pennsylvania for approximately nine months in 2010. [doc. no. 84-4 at pg. 8; doc. no. 86 at ¶ 22]. That location is now closed. [doc. no. 84-4 at pg. 8; doc. no. 86 at ¶ 23]. Taza Systems first became aware of the original TAZA21 restaurant in Squirrel Hill in 2010, shortly before it sent a cease and desist letter to Taza21 on October 29, 2010. [doc. no. 84-4 at pg. 9; doc. no. 86 at ¶ 29].

B.   Alleged Factual Dispute Regarding Notice Date

Taza21 claims that Taza Systems knew about the TAZA21 restaurant in Squirrel Hill shortly after it opened in 2008, instead of in 2010, as Taza Systems alleges. The only evidence Taza21 has produced in support of its contention is testimony from Taza21's owners, Mr. and Mrs. Abraham, that Camille Chamoun, the brother of Taza Systems' owner Fady Chamoun, visited TAZA21 shortly after it opened in 2008 to offer his congratulations. Even assuming this testimony to be true, as we must because Taza21 is the non-movant, Taza21 has submitted no evidence, whether direct or circumstantial, indicating that Camille told Fady about his alleged visit. [doc. no. 74-1, Ex. J at pgs. 60-61 (Frank Abraham-A: "I don't know if [Camille] told [Fady] or not" and Q: "Do you have any reason to believe [Camille] did tell [Fady]?" Frank Abraham-A: "Not really."; doc. no. 84-4 at pg. 7; doc. no. 84-5 at pg. 21 (Q: "Do you have any personal knowledge about whether…Camille Chamoun told Fady that he came to visit your restaurant? Silva Abraham-A: "I don't know."]. In addition, Taza21 has acknowledged that Camille Chamoun was not an officer, employee, owner, or agent of Taza

Systems.  [doc. no. 86 at ¶ 70].   Therefore, Camille's personal visit to TAZA21 cannot be imputed by operation of law to Taza Systems.

Furthermore, although Taza21 refuses to admit to Taza Systems' proposed statement of material fact that "Camille Chamoun did not tell Fady Chamoun about the Defendants' restaurants until [late 2010]," it again does not produce any evidence in support of its contrary position.  Instead, Taza21 denies the statement of fact on the ground that Taza21 was "not afforded the opportunity to depose Camille Chamoun as he refused service of process of the deposition subpoena and did not show up for his deposition." [doc. no. 86 at ¶ 71].  However, this is not a valid basis on which to deny an asserted statement of material fact in the context of a motion for summary judgment.  Nor is a response to a statement of material fact the proper procedural vehicle by which to obtain a negative evidentiary inference as a result of a witness' purported failure to comply with a discovery subpoena.  Taza21's attempt to deny a statement of material fact because a witness may have violated his discovery obligations is ineffective to create a dispute of fact regarding when Taza Systems became aware of TAZA21.

Finally, even if it were true that Taza Systems knew about the opening of TAZA21 in 2008, that fact would be without ultimate legal consequence under the circumstances of this case.  This fact would only be relevant in the context of an argument that Taza Systems had abandoned its registered service marks due to a failure to police unauthorized third-party uses.  As is discussed in section III.A.2., below, Taza21 has failed to produce evidence that would satisfy the legal requirements to support such an attack on Taza Systems' registrations.

In summary, even were we to accept as true Taza21's testimonial evidence, as we must do because it is the non-movant, all it establishes is that a member of the Chamoun family knew about TAZA21 in 2008.  Such evidence fails to establish anything regarding Taza

System's knowledge. In addition, Taza21 cannot deny a statement of material fact on the ground that a witness disobeyed a discovery subpoena. Thus, the record reflects that Taza Systems first became aware of the TAZA21 restaurant in Pittsburgh in 2010. [doc. no. 74, Ex. F at pg. 2; doc. no. 86 at ¶¶ 69, 71]. Finally, even if Taza21 were correct on this fact, it would still be insufficient to establish that Taza Systems had abandoned its service mark registrations under the applicable legal standards.

      C.  <u>New Legal Claim of Abandonment Due to Non-Use</u>

      Taza21 contends, in response to Taza Systems' concise statement of material facts, that there is no evidence that Taza Systems still uses the word mark TAZA without the phrase A LEBANESE GRILL. [doc. no. 86 at ¶¶ 1, 12]. In other words, Taza21 is arguing that Taza Systems has abandoned its rights in Reg. No. 3,439,240 for the word mark TAZA due to non-use.

      However, Taza21 cannot now pursue this legal position. First, Taza21 has not included abandonment of the registration for the TAZA mark due to non-use in any of its operative pleadings. It is too late for Taza21 to amend its pleadings to add this additional legal challenge now. Any such amendment would require additional fact discovery, yet discovery has been closed for months and summary judgment has already been fully briefed. On this basis alone, we would not permit Taza21 to amend its pleadings to add this novel legal argument.

      In addition, although not necessary to our conclusion, we note that specimens of use submitted to the court in conjunction with the briefing on summary judgment show that Taza Systems displays the word mark TAZA, alone, above the entrance awning to its downtown restaurant, which opened in October of 2011. [doc. no. 74, Ex. F at ¶ 4; doc. no. 74-2, Ex. CC at pgs. 14, 19, 24-26, and 28; doc. no. 84, Ex. J]. Taza Systems submitted these same specimens to

the United States Patent and Trademark Office when filing its section 8 declaration in June of 2013. A section 8 declaration is a sworn statement filed by the owner of a trademark registration indicating that the mark continues to be used in commerce. 15 U.S.C. § 1058. This Court can take judicial notice of Patent & Trademark Office filings. Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 549 (Fed. Cir. 2011); Erbe v. Billeter, 2006 WL 3227765 (W.D. Pa. Nov. 3, 2006); see also FED. R. EVID. 201(b)(2). Given that the record before this Court reflects that Taza Systems actively uses the word mark TAZA at its downtown Cleveland restaurant, and given that Taza Systems has recently filed a sworn statement with the U.S. Patent and Trademark Office to that same effect, any amendment to add a challenge based on non-use would be futile.

Furthermore, in order to support its claim of abandonment due to non-use, Taza21 would be required to produce evidence of an intent to abandon. 15 U.S.C. § 1127(a) ("A mark shall be deemed to be 'abandoned'… [w]hen its use has been discontinued with intent not to resume"); U.S. Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 138-40 (3d Cir. 1981).[1] The record is devoid of any such evidence, and again, we would not reopen discovery at this late date in order to allow Taza21 to attempt to gather such evidence. In addition, as discussed immediately above, it would be difficult for Taza21 to produce any evidence proving that Taza Systems intended to abandon the word mark TAZA in light of the fact that Taza Systems uses the word mark TAZA, alone, above the entrance to a restaurant location that was opened less

---

[1] Appeals in trademark and service mark cases are heard by the regional court of appeals, and not by the Court of Appeals for the Federal Circuit, as in the case of appeals in patent cases. 28 U.S.C. § 1295(a)(1). As such, precedent from the Court of Appeals for the Third Circuit is controlling. However, although not controlling, case law from the Court of Appeals for the Federal Circuit on trademark and service mark issues is deemed particularly persuasive.

than two years ago, and in light of the fact that within the last few months Taza Systems filed a sworn statement attesting to that exact use with a federal agency.

Given these facts, and given that Taza Systems holds a valid registration for the word mark TAZA, which carries with it a presumption of ownership and validity, we will not entertain Taza21's newly asserted abandonment challenge. 15 U.S.C. § 1057(b).


II.    LEGAL AUTHORITY

Summary judgment is appropriate if the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  In evaluating the motion, all factual inferences must be drawn in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The summary judgment inquiry asks whether there is a need for trial – "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250.  In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 248–49; Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000) (citing cases).

The burden of showing that no genuine issue of material fact exists rests initially on the party moving for summary judgment. Celotex, 477 U.S. at 323; Aman v. Cort Furniture

<u>Rental Corp.</u>, 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." <u>Celotex</u>, 477 U.S. at 325.  A defendant who moves for summary judgment is not required to refute every essential element of the plaintiff's claim.  Rather, the defendant must only point out the absence or insufficiency of plaintiff's evidence offered in support of one or more those elements.  <u>See Celotex</u>, 477 U.S. at 322-23.  Once the movant meets that burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. FED.R.CIV.P. 56(e); see <u>Liberty Lobby</u>, 477 U.S. at 247–48; <u>Celotex</u>, 477 U.S. at 323-25.  If the evidence the non-movant produces is "merely colorable, or is not significantly probative," the moving party is entitled to judgment as a matter of law.  <u>Liberty Lobby</u>, 477 U.S. at 249.

However, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" <u>Corliss v. Varner</u>, 247 Fed. Appx. 353, 354 (3d Cir. 2007) (quoting <u>Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.</u>, 311 F.3d 226, 233 (3d Cir. 2002)).

Moreover, the mere existence of a factual dispute will not necessarily defeat a motion for summary judgment.  Only a dispute over a material fact – that is, a fact that would affect the outcome of the suit under the governing substantive law – will preclude the entry of summary judgment.  Liberty Lobby, 477 U.S. at 248.  Even then, the dispute over the material fact must be genuine, such that a reasonable jury could resolve it in the nonmoving party's favor. Id. at 248-49.

III.    DISCUSSION

A.    Taza21's Counterclaims

    1.    Use in Commerce

Taza21 has asserted that each of Taza Systems' registrations is invalid and subject to cancellation because Taza Systems did not provide services in interstate commerce, as required to justify registration under the Lanham Act. [doc. no. 26 at ¶ 14 and Counterclaims, ¶¶ 9, 13, and 18].  Taza Systems has moved for summary judgment on this defense and counterclaim, arguing that Taza21 has failed to adduce sufficient evidence to warrant submitting it to a jury.  Because Taza21 has submitted no evidence in response to Taza Systems' motion for summary judgment on this issue, we grant the motion as to this defense and counterclaim.

    (a)    Relevant Facts

Taza Systems operates two restaurants in Ohio under the marks TAZA and TAZA A LEBANESE GRILL (word and design).  One is in Cleveland and one is in an eastern suburb of that city.  Cleveland is one of the largest cities in Ohio, and is located adjacent to various interstate highways.  It is also located on the shores of Lake Erie, one of the Great Lakes that shares its border with Canada.

Taza Systems' restaurants regularly service out-of-state customers. [doc. no. 74-2, Ex. BB at ¶ 5]. Taza Systems maintains a website to advertise and promote its restaurants at the URL www.mytaza.com. [Id. at ¶ 6]. That website is, of course, accessible from anywhere in the world.

(b)    Relevant Law

A service mark or trademark that is used in commerce may be registered under the Lanham Act. 15 U.S.C. §§ 1051, 1053. A mark is used "in commerce" on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce. 15 U.S.C. § 1127. Commerce is in turn defined to mean "all commerce which may lawfully be regulated by Congress." Id. These jurisdictional definitions are intended to give the Lanham Act the broadest possible reach, not to limit it. See Steele v. Bulova Watch Co., 344 U.S. 280, 287 (1952).

Therefore, it follows that because Congress' authority under the Commerce Clause extends even to purely intrastate activity if that activity substantially affects interstate commerce, the Lanham Act's authority includes the same. Gonzales v. Raich, 545 U.S. 1, 5 (2005); United States v. Lopez, 514 U.S. 549, 559 (1995); Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 165 (3d Cir. 2001). In the context of restaurants located in a single state, some factors that have been deemed to satisfy the interstate commerce requirement of the Lanham Act include location near interstate highways, servicing customers from other states, advertisements in out-of-state publications, and purchasing ingredients from out-of-state vendors. Larry Harmon Pictures Corp. v. The Williams Restaurant Corp., 929 F.2d 662, 663 & n.1, 666 (Fed. Cir. 1991); see also Lebewohl v. Heart Attack Grill LLCLebewohl v. Heart Attack Grill LLC, 890 F.Supp.2d 278, 291 (S.D.N.Y. 2012).

Registration of a service mark on the Principal Register constitutes <u>prima</u> <u>facia</u> evidence of the validity of a trademark and of the owner's exclusive right to use it in commerce. 15 U.S.C. § 1057(b); <u>U.S. Jaycees</u>, 639 F.2d at 137.

      (c)      <u>Discussion and Conclusion</u>

Taza21 will have the burden of proving at trial that Taza Systems does not use its registered service marks "in commerce", as that term is broadly defined under the Commerce Clause and the Lanham Act.  In doing so, Taza21 will have to produce evidence that will contradict and overcome the rebuttable presumption of validity and ownership of the marks afforded to Taza Systems because it holds registration certificates for all three service marks. FED. R. EVID. 301; <u>McCann v. Newman Irrevocable Trust</u>, 458 F.3d 281, 287 (3d Cir. 2006) (discussing the "bursting bubble" theory of presumptions).

In its motion for summary judgment, Taza Systems contends that Taza21 has produced no evidence to support its contention that the registered service marks are not used in commerce.  This is a proper basis for Taza Systems' motion, and places upon Taza21 the burden to respond by identifying specific evidence that could establish at trial that the services marks are not used in commerce.

However, Taza21 identifies no evidence in response to Taza Systems' motion. Instead, the entirety of Taza21's opposition to the motion consists of its assertions that Taza Systems' evidence of interstate use is "self-serving," "uncorroborated," and legally insufficient, and its argument that Taza Systems' citation to one case is "inapposite" because it is a trademark case and not a service mark case.  Taza21's response includes not one citation to the evidentiary record.  Because Taza21 bears the burden of proof at trial and must produce evidence in order to

11

rebut the presumption of validity, it cannot defeat Taza Systems' motion by merely attacking the character and sufficiency of its evidence.

Taza Systems need not prove anything at trial regarding its use of the marks in commerce, beyond establishing that it holds valid registration certificates. It is Taza21 that must produce evidence to rebut the presumption afforded to Taza Systems due to those registrations, and to carry its burden of proof on its defense and counterclaim challenging the validity of those registrations. Taza21 has produced no evidence to contradict Taza Systems' assertion that 25% of its customers come from out-of-state, or to otherwise prove that operation of the TAZA restaurants has no substantial effect on interstate commerce. Because it is Taza21's burden to do so, its failure in that regard means that we must grant Taza Systems' motion.

2.    Abandonment – Failure to Police

Taza21 has asserted that each of Taza Systems' registrations is invalid and subject to cancellation because Taza Systems failed to police third-party uses of confusingly similar marks. [doc. no. 26 at ¶ 15 and Counterclaims at ¶ 19].[2] Taza Systems has moved for summary judgment on this defense and counterclaim, arguing that Taza21 cannot establish, either factually or legally, that it has abandoned its rights in the registered service marks. We agree with Taza Systems.

(a)    Relevant Facts

Taza Systems began using its service marks in commerce in November of 2005 when it opened its suburban store. [doc. no. 86 at ¶ 1]. In 2009, when Taza Systems learned of a

---

[2] Although Taza21 only asserts this legal challenge in the form of a Counterclaim against the TAZA word mark, its Fourth Defense challenges all three registered marks on this ground. The distinction is immaterial to our legal analysis and decision. For purposes of this opinion we will proceed on the basis that Taza21 makes this legal challenge to all three registered service marks, and will accordingly discuss them as a collective group.

restaurant near Columbus, Ohio named TAZA FRESH MEDITERRANEAN EATERY, it sent a cease and desist letter to the owner.  [Id. at ¶ 66].  The owner promptly changed the name of the restaurant. [Id.].  Since that time, and after the filing of this case, Taza Systems has sent a dozen cease and desist letters to restaurants in California, Florida, Illinois, Michigan, New York, Nevada, and Texas that appear to include the word TAZA in their name.  [doc. no. 74-2, Ex. MM].

Also after the filing of this case, Taza Systems filed an opposition to Starbucks Corporation's application to register the mark TAZO in classes 35 and 43 for restaurant, and related, services, based on a likelihood of confusion with all three of its registered service marks. [doc. no. 86 at ¶ 68; Oppos. No. 91207525, available at www.uspto.gov].  Starbucks Corporation owns numerous prior registrations for use of the mark TAZO in classes 30 and 32 to identify teas and other beverages.

(b)   Relevant Law

If a trademark or service mark becomes generic, or otherwise loses its significance as an indicator of source due to the conduct of the owner, it can be deemed legally abandoned.  15 U.S.C. § 1127 ("owner conduct abandonment").  A mark can also be deemed legally abandoned if the owner discontinues use, with an intent not to resume it. Id. ("non-use abandonment").  However, a party arguing for abandonment has a high burden of proof because abandonment, being in the nature of a forfeiture, must be strictly proved. Zurco, Inc. v. Sloan Valve Comp., 785 F.Supp.2d 476, 492 (W.D. Pa. 2011) (citing Doebler's Pennsylvania Hybrids, Inc. v. Doebler, 442 F.3d 812, 822 (3d Cir. 2006) and U.S. Jaycees, 639 F.2d at 139).

A "failure to police" one's marks is one type of owner conduct that is commonly assumed to inevitably result in abandonment.  However, a challenger must prove more than the

lack of an aggressive enforcement program in order to prevail under this theory.  The United

States Court of Customs and Patent Appeals, a precursor to the United States Court of Appeals

for the Federal Circuit, aptly explained the doctrine as follows:

> Without question, distinctiveness can be lost by failing to take action against
> infringers. If there are numerous products in the marketplace bearing the alleged
> mark, purchasers may learn to ignore the "mark" as a source identification. When
> that occurs, the conduct of the [] owner, by failing to police its mark, can be said
> to have caused the mark to lose its significance as a mark. However, an owner is
> not required to act immediately against every possibly infringing use to avoid a
> holding of abandonment.

Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp., 680 F.2d 755, 766 (C.C.P.A. 1982).

Thus, in order to establish abandonment based on a "failure to police", it is not

enough to merely prove that a mark owner has failed to take action against third-party infringers.

Instead, the challenger must establish that the presence of these third-party users in the

marketplace has resulted in what has been described as a "loss of trade significance."  Exxon

Corp., 109 F.3d at 1080; see also 15 U.S.C. § 1127.  A "loss of trade significance" is another

way of saying that a mark is no longer distinctive because it fails to "identify and distinguish the

services of one person… from the services of others and to indicate the source of the services."

15 U.S.C. § 1127; Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992).

The distinctiveness of a mark is evaluated by placing it into one of four categories: (1)

arbitrary or fanciful; (2) suggestive; (3) descriptive; and (4) generic.  Id.; E.T. Browne Drug Co.

v. Cococare Products, Inc., 538 F.3d 185, 191 (3d Cir. 2008).  The first two types of marks are

"inherently distinctive" and are afforded protection under the Lanham Act automatically. Ford

Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 291 n.18 (3rd Cir. 1991).  The third

type of mark must acquire distinctiveness as an identifier of the source of a good or service, also

called "secondary meaning", before it can be eligible for protection. E.T. Brown, 538 F.3d at

191, 199. The fourth category of marks is never protectable as a trademark or service mark. <u>A.J.</u> <u>Canfield Co. v. Honickman</u>, 808 F.2d 291, 296 (3d Cir. 1986).

A generic mark can never become a trademark because it is essentially the common name of a product or service. One company cannot assert exclusive ownership rights in that word, thereby preventing competitors from using the word that best describes the item or service. In other words, instead of identifying a producer, which is what a trademark or service mark does, a generic mark identifies the type of product. For example, COLA is generic, whereas PEPSI COLA is not. <u>E.T. Browne</u>, 538 F.3d at 192. Therefore, a party seeking to prove that an owner has abandoned its mark due to a failure to police must demonstrate that the mark has become generic.

(c)   <u>Discussion and Conclusion</u>

Taza21's evidence in response to Taza Systems' motion for summary judgment on the legal claim of abandonment due to failure to police consists of two things: (1) a list compiled by Taza21's counsel of approximately 51 businesses that include the word TAZA in their name; and (2) less than 30 pages of a more than 315 page Thomson CompuMark Trademark Research Report issued to Taza Systems' attorney approximately seven years ago. This evidence does nothing to establish that Taza Systems' registered marks have lost their significance as an indicator of the source of its restaurant and bar services. Without making this essential showing, Taza21's defense and counterclaim must fail due to a failure of proof.

Taza21's evidence does no more than establish that, at one point in time, various businesses across the United States may have used the word TAZA in their names. [doc. no. 84, Exs. B & C]. Those businesses range from coffee shops and restaurants to blown glass manufacturers and residential building contractors. [<u>Id</u>.]. This raw data simply does not consist

of the "highly factual analysis of consumer perception and identification" that would tend to prove that the marks had become generic as a result of a failure to police. Hermes Int'l v. Lederer De Paris Fifth Avenue, Inc., 219 F.3d 104 (2d Cir. 2000).

Moreover, under the Dawn Donut rule, because these third parties use their marks in geographically "separate trading areas" and there is no evidence that Taza Systems had imminent plans to expand into the third-party user's territory, no public confusion is likely. Members First Federal Credit Union v. Members 1st Federal Credit Union, 54 F.Supp.2d 393, 400-401 (M.D. Pa. 1999) (discussing Dawn Donut Comp. v. Hart's Food Stores, Inc., 267 F.2d 358 (2d Cir. 1959)). Without a likelihood of confusion, Taza Systems could not have prevented those geographically distant third-parties from using a similar mark. It follows that these geographically distant third-party uses cannot result in Taza Systems' mark becoming generic in the owner's market. Id.

Taza21 is mistaken that these third-party uses place Taza Systems' marks into the category of "extreme circumstances" and "extensive, persistent, and adverse use by the public." [doc. no. 85 at pg. 59]. The cases cited by Taza21 in support of these theories addressed a descriptive mark that failed to acquire secondary meaning both because the owner failed to use it and also allowed third-parties to use it descriptively. Such cases are inapposite here because Taza Systems' marks did not have to acquire secondary meaning before being entitled to protection.

Because Taza21 has not submitted evidence sufficient to establish that the moniker "Taza" has become generically descriptive of restaurant services as a result of Taza Systems' failure to police the market, we must grant Taza Systems' motion for summary judgment on the defense and counterclaim of abandonment due to a failure to police. In doing

so, we recognize that the presence of many users in the national marketplace could demonstrate that the mark, although valid and enforceable, is weak and entitled to limited protection against only exact, or near-exact, third-party uses. Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc., 270 F.3d 298 (6th Cir. 2001).  However, the fact-finder will be charged with making such assessments in evaluating Taza Systems' trademark infringement claim at trial.

3.   Descriptiveness – Doctrine of Foreign Equivalents

Taza21 has also asserted that each of Taza Systems' registrations is invalid and subject to cancellation because the service marks are merely descriptive upon application of the doctrine of foreign equivalents. [doc. no. 26 at ¶¶ 17, 21-23, 25 and Counterclaims, ¶¶ 8 and 17]. Taza Systems has moved for summary judgment on this defense and counterclaim, arguing that Taza21 has failed to establish that the doctrine invalidates its registered marks.  We agree with Taza Systems and grant its motion as to this defense and counterclaim.

(a)   Relevant Facts

The United States Patent and Trademark Office issued registrations to Taza Systems for the word and design mark TAZA A LEBANESE GRILL, and the word mark TAZA for restaurant and bar services in International Class 43. [doc. no. 1, Exs. A, B, and C].  During prosecution, Taza Systems disclosed that the word "taza" translates from the Lebanese dialect of Arabic to English as "fresh", and each of the registration certificates explicitly reflects this translation. [Id.].  "Taza" also translates from Arabic to English as "new," and from Spanish to English as "cup" or "toilet bowl." [doc. no. 86 at ¶¶ 59-60].

Taza21 has submitted printouts from various on-line dictionaries reflecting that "taaza" translates from Hindi to English as "fresh" and "green," that "taze" translates from Turkish to English as "fresh" and "youthful," and that "tāza" translates from Persian to English as

"fresh; young; new."  [doc. no. 84-15].[3]  We take judicial notice of such dictionary definitions.

See FED. R. EVID. 201; Buczek v. Continental Cas. Ins. Co., 378 F.3d 284, 291 (3d Cir. 2004).

Americans with ancestry from Arabic-speaking countries comprise 0.42% of the

total population of the United States, with only 0.16% of the population identifying as Lebanese.

[doc. no. 86 at ¶¶ 54-56].  The percentage of the United States population that speaks Arabic is

0.19%, with only 0.075% of the population speaking the Lebanese dialect of Arabic.  [doc. no.

86 at ¶¶ 55-57].  Updated statistics recently released by the United States Census Bureau indicate

that a still negligible percentage of the U.S. population speaks Arabic. See Language Use in the

United States: 2011, issued by the United States Census Bureau on August 6, 2013 and available

at www.census.gov (indicating that 0.33% of U.S. population speaks Arabic).  We can take

judicial notice of reports issued by the United States Census Bureau.  FED. R. EVID. 201; see

also, Chandler v. Univ. of Penna., ___ F.Supp.2d ___, 2013 WL 754689 (E.D. Pa. Feb. 28,

2013).  Spanish is the most commonly spoken foreign language among the U.S. Population, with

60% of those not speaking English at home speaking Spanish, and 1.29% of the overall U.S.

population being comprised of Spanish-speakers.

---

[3]  We summarily dispense with Taza21's Tenth Defense and Third Counterclaim, which essentially accuse Taza Systems of obtaining registration of its marks by defrauding the U.S. Patent and Trademark Office by failing to inform it that, in addition to the Lebanese dialect of Arabic, "taza" also translates into English as "fresh" in Hindi and Turkish.  [doc. no. 26 at ¶¶ 21-23 and Counterclaim at ¶ 20].  First, the foreign words identified by Taza21 itself are not "taza," but instead have differing spellings and pronunciations.  Second, according to Taza21's own evidentiary submissions, the foreign words translate into English not only as "fresh," but also as "green", "young" and "new".  Finally, Taza21 has failed to submit any evidence to establish that knowledge of these additional translations would have been material to the Examiner, who never issued a descriptiveness rejection during prosecution of any of Taza Systems' marks, or were omitted by Taza Systems with an intent to deceive or defraud the PTO, as would be required to viably attack Taza System's registrations on this ground.  See e.g., Marshak v. Treadwell, 58 F.Supp.2d 551, 565-68 (D.N.J. 1999).

Although Taza21 takes issue with the fact that the population data that Taza Systems relies on is from a 2000 U.S. Census Bureau report, it provides no updated, or alternative, data.  Moreover, Taza21 has provided no evidence at all regarding what percentage of the U.S. population speaks Hindi, Turkish or Persian, even though it contends that the English translation of words in those languages is a basis on which to invalidate Taza Systems' registered marks.[4]  Other than attaching printouts from various on-line dictionaries to its briefing, Taza21 has submitted no evidence to support its position that three service marks were erroneously granted federal registration by the federal agency vested with sole authority to so act.

(b)    Relevant Law

Registration of a service mark on the Principal Register constitutes prima facia evidence of the validity of a trademark and of the owner's exclusive right to use it in commerce.  15 U.S.C. § 1057(b); U.S. Jaycees, 639 F.2d at 137.  However, if a challenger can come forward with evidence to establish that the mark was erroneously registered, the registration can be cancelled or otherwise invalidated.  15 U.S.C. §§ 1119, 1064.

Under the doctrine of foreign equivalents, foreign words from common languages are translated into English to determine whether they are generic or descriptive. Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 1377 (Fed. Cir. 2005).  The doctrine prevents a word commonly used in another language to "designat[e] a product as what it is" from being transformed into a trademark in the United States, which can only be used by one owner. Otokoyama Co. Ltd. v. Wine of Japan Import, Inc., 175 F.3d 266, 271 (2d Cir. 1999); see also, 2 McCarthy on Trademarks and Unfair Competition § 12:41 (4th ed.).

_____

[4] Updated U.S. Census Bureau data indicates that 0.22% of the U.S. population speaks Hindi and 0.14% speaks Persian.  Census data does not include a category for Turkish-speaking Americans.

However, the doctrine of foreign equivalents applies only if the "ordinary American purchaser" would "stop and translate" the mark into English. In re Spirits Int'l, N.V., 563 F.3d 1347, 1351-52 (Fed. Cir. 2009) (citing Palm Bay Imports, 396 F.3d at 1377; Trademark Manual of Examining Procedure ("TMEP") at §§ 1207.01(b)(vi), 1209.03(g).  When it is unlikely that an American buyer will translate the foreign mark, either because of unfamiliarity with the foreign word, or association of the word with its foreign language through décor, the doctrine does not apply.  Palm Bay Imports, 396 F.3d at 1377; In re Tia Maria, Inc., 188 U.S.P.Q. 524, 525-25 (T.T.A.B. 1975) (unlikely that a diner at a Mexican restaurant would translate TIA MARIA into English as AUNT MARY's).  "[T]he 'ordinary American purchaser' is not limited to only those consumers unfamiliar with non-English languages; rather, the term includes all American purchasers, including those proficient in a non-English language who would ordinarily be expected to translate words into English." Id. at 1532.

(c)    Discussion and Conclusion

Taza21 has failed to adduce any evidence which would allow a reasonable juror to overcome the presumption of validity afforded to Taza Systems by its federal registrations and conclude that the ordinary American purchaser would deem the mark TAZA to be descriptive of "restaurant and bar services."  As such, we will enter judgment as a matter of law on this defense and counterclaim.

As an initial matter, given that Taza Systems' restaurants feature Lebanese food, décor, and music, it is arguable that the doctrine does not apply at all.  Where the ordinary American purchaser would not be prompted to translate a foreign word because of the context in which it is used, the doctrine of foreign equivalents does not apply.  See, Tia Maria, 188 U.S.P.Q. at 525-25; [doc. no. 86 at ¶ 65].  Here, the mark TAZA appears in the context of a

restaurant that serves Lebanese food, plays Lebanese music, and is decorated with Lebanese decor.  Under these circumstances, a reasonable juror could find that the ordinary American purchaser would not even translate the mark TAZA, making the doctrine of foreign equivalents inapplicable.

However, assuming that the doctrine of foreign equivalents might apply, Taza21 has failed to produce any evidence from which a reasonable juror could conclude that the doctrine would invalidate Taza Systems' trademark registrations under the circumstances of this case.  First, there would be no basis on this record for a reasonable juror to make the required threshold finding that the ordinary American purchaser would stop and translate the service mark TAZA into English as "fresh."  The uncontroverted evidence is that only a third of one percent of the United States population speaks Arabic.[5]  This statistic alone compels the conclusion that it would be unlikely for an ordinary American buyer to stop and translate the foreign mark. Although Taza21 contends that speakers of Hindi, Turkish, and Persian might also translate the mark TAZA to mean "fresh," it has provided no evidence to establish what percentage of the U.S. population speaks those languages, making this argument inapposite.

Moreover, the evidence that Taza21 has submitted in support of its argument, i.e., pages from various on-line dictionaries, actually does no more that establish that words *similar* to "taza" translate into various English words, including "green," "youthful," "new," "young" and "fresh."  As such, it is arguable that the evidence submitted by Taza21 would not even invoke the doctrine at all given because there are multiple translations and varying foreign spellings and pronunciations. See, In re Sarkli, Ltd., 721 F.2d 353, 354-55 (Fed. Cir. 1983)(doctrine inapplicable where foreign word had multiple translations); In re OpBiz, 2009

---

[5] This statistic is in accord with Taza Systems' survey evidence in which only one person out of 200 (or 0.50%) knew that "taza" translated into English as "fresh." [doc. no. 86 at ¶ 58].

WL 873127, at *6 (T.T.A.B. 2009)(same).   Regardless, even if the doctrine would apply, and assuming that a purchaser would stop and translate the word "taza", the evidence of record would be as likely to support the conclusion that the word would be translated as "green" or "youthful", as it would as "fresh."    In fact, the evidence of record would be most likely to support the conclusion that the ordinary American purchaser would translate the word "taza" from Spanish into English to mean "cup," given that Spanish is the most commonly spoken foreign language in the United States.

Regardless, even if the Taza21 could establish that the ordinary American purchaser would stop and translate "taza", the question would become whether the mark FRESH is descriptive of restaurant and bar services, which is the class of goods or services for which Taza Systems' marks are registered.   Services can be described as friendly, speedy, or wholesome.   However, no reasonable juror could conclude that "fresh" is a word used to describe restaurant and bar services.   Although "fresh" could be suggestive of the type of products or ingredients used at a particular restaurant, as opposed to another, suggestive marks are inherently distinctive and entitled to trademark protection.

Put another way, a speaker of Arabic, Turkish, Hindi, or any related language, would not understand the term "fresh" to inexorably refer to a restaurant or bar.   The purpose of the doctrine of foreign equivalents is to prevent one United States merchant from commandeering the foreign word that represents a good or service to the foreign, or foreign-speaking, purchaser.   Otokoyama, 175 F.3d at 272.   In this case, the doctrine would do no more than prevent Taza Systems from acquiring service mark rights to the Arabic (or Turkish or Hindi) words for restaurant or café or eatery.   See In re Pan Tex Hotel Corp., 190 U.S.P.Q. 109, 109-10 (T.T.A.B. 1976) (LA POSADA (English translation "inn") not descriptive of lodging and

restaurant services). Here, Taza Systems' registrations for "taza" or "fresh" do not remove an inevitably descriptive or generic word for restaurant or bar services in a foreign language from public use in the United States. As a result, no reasonable juror could find, based on this record, that Taza Systems' service mark registrations are invalid and unenforceable due to the doctrine of foreign equivalents.

Taza21 itself recognizes the distinction between how products and services are described when, in the opening lines of its opposition brief on this very legal issue, it states that "'[f]resh,' an adjective, means newly produced, gathered or made: not altered by processing" and that "[b]oth Plaintiff and Defendants describes their goods as 'taza,' i.e., 'fresh.'" [doc. no. 82 at p. 40 (underlining added)]. Taza21 itself acknowledges that the word "fresh" describes food items that might be served inside a restaurant, not the restaurant services themselves. Therefore, Taza21's own argument establishes that even if it could prove that the ordinary American purchaser would translate "taza" to mean "fresh", no reasonable juror could conclude that the service mark TAZA is either generic or descriptive of restaurant and bar services.

For the foregoing reasons, Taza Systems' service mark registrations are not subject to cancellation, or otherwise unenforceable in this action, under the doctrine of foreign equivalents. We must enter judgment as a matter of law on Taza21's claims to the contrary.

B.    The Trademark Claim

  (a) Relevant Facts

Taza Systems owns federal registrations for the word marks TAZA and TAZA A LEBANESE GRILL for restaurant and bar services and for the design mark TAZA A LEBANESE GRILL for restaurant and bar services. [doc. no. 74, Ex. A, B, and C]. All three registrations state that "the English translation of taza is fresh" and claim a first use in commerce

date of November 22, 2005. [Id.].  The last two registrations disclaim the exclusive right to use the phrase "A Lebanese Grill" separate and apart from the mark as a whole.  [Id. at Ex. B and C].

Taza Systems, which is headquartered in Ohio, operates two sit-down restaurants in that state under these registered service marks, and has indicated it intends to expand its business into the Pittsburgh market. [doc. no. 74, Ex. F at ¶ 4].  Taza21 operates one take-out restaurant in Pittsburgh, Pennsylvania under the name TAZA21.   The record indicates that Taza21 uses the TAZA21 mark both alone and in combination with the words "fresh" and "shawarma café."  [see doc. no. 74-1 at pp. 68, 94].  Both restaurants serve similar types of food, such as hummus and lamb.

(b)  Relevant Law

The elements of a claim for relief under Section 32 of the Lanham Act, 15 U.S.C. § 1114, are well established. A plaintiff must show that: (1) it is the owner of a valid and legally protectable mark; and (2) the defendant's use of a similar mark to identify its goods or services causes a "likelihood of confusion."  Kos Pharma., Inc. v. Andrex Corp., 369 F.3d 700, 708-09 (3d Cir. 2004).   The mark owner bears the burden of proof as to each of the three elements. A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210–11 (3d Cir. 2000).

The Court of Appeals for the Third Circuit applies the Lapp factors to determine whether there is a likelihood of confusion. Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1983).  The Lapp factors are: (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7)

whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market. A&H Sportswear, 237 F.3d at 215 (holding that the Lapp factors apply to test for likelihood of confusion whether or now the goods directly compete).  In applying these factors, which the Court of Appeals has described as a "qualitative inquiry," not all factors will be relevant in all cases and different factors may properly be accorded different weights depending on the particular factual setting. Id.

Summary judgment can be entered on the issue of trademark infringement only where "no reasonable juror could conclude anything other than that a likelihood of confusion as to the source of the goods or services exists." Video Pipeline, Inc. v. Buena Vista Home Entertainment. Inc., 275 F.Supp.2d 543, 574 (D.N.J. 2003).  In trademark actions, likelihood of confusion is a fact question and entering judgment as a matter of law is the exception.  Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.3d 1056, 1062-63 (3d Cir. 1991).

(c) Discussion and Conclusion

Taza Systems has filed a motion for summary judgment on the issue of trademark infringement arguing that no reasonable juror could rule in favor of Taza21 on this legal claim. We conclude that the record does not support entry of judgment as a matter of law on the claim of trademark infringement because a jury must make the ultimate factual determination of

whether there is a likelihood of confusion between the two marks, and in doing so will be required to resolve various factual disputes.

As an initial matter, based on the rulings made in Section A, it is appropriate to determine, as a matter of law, that Taza Systems owns a valid and legally protectable mark. Taza21 is unable to submit sufficient evidence on any of its legal challenges to Taza Systems' registered mark to warrant submission of them to a jury.

However, the second part of the infringement analysis, *i.e.*, whether there is a likelihood of confusion between Taza Systems' and Taza21's marks must be submitted to a jury. To conclude otherwise would require that we find that no reasonable juror could find that there was no likelihood of confusion between the marks at issue.  The record before the Court does not compel such a conclusion.  Instead there are numerous facts in dispute, such as how the marks are used in commerce, the strength of Taza Systems' marks, whether third parties use similar marks, and Taza21's intent in adopting its mark.  Moreover, even where the facts themselves are not in dispute, the relevancy and weight of those facts in deciding the ultimate issue of likelihood of confusion must be left to the fact-finder.  For instance, the credibility and weight to be assigned to Mr. Koury's testimony regarding actual confusion can only be made by a fact-finder. So too must a fact-finder decide the weight to be given to Taza Systems' survey evidence.

Even if the Court has a subjective opinion as to the appropriate answer to the "likelihood of confusion" question, because the record would support a reasonable jury finding to the contrary, we must deny Taza Systems' motion on this claim.

C.     The Motion in Limine to Exclude Expert Testimony

On January 22, 2013, about one week before motions for summary judgment were due, Taza Systems filed a motion *in limine* to exclude the proffered expert report of J. Matthew

Pritchard. [doc. no. 62, 69].   In its motion, Taza Systems argued that the report should be excluded because: (1) it was untimely served; (2) it is merely legal argument masquerading as expert opinion; and (3) it fails to meet the reliability requirements under <u>Daubert</u>. [doc. no. 69, generally].

Taza21 did not file a motion seeking entry of summary judgment on any basis, and did not rely on the testimony of Mr. Pritchard in opposing Taza Systems' motion for summary judgment.   This Court has yet to set any deadlines for Pre-Trial filings.   In fact, deadlines for the completion of expert discovery on the issue of damages have not yet been established.   No trial date has been set.   Under these circumstances, Taza Systems' motion <u>in limine</u> is premature.   If Taza21 identifies Mr. Pritchard as a witness, the Court, at that time, can address any opposition that Taza Systems might have to his proffered trial testimony.   Until that time, the motion raises objections that are hypothetical and conjectural.   The motion will be denied as premature and moot.

D.     <u>The Motion to Strike Taza21's Exhibits</u>

Taza Systems has moved to strike five of the twelve exhibits that Taza21 submitted in opposition to Taza Systems' motion for summary judgment. [doc. no. 95].   The exhibits to which Taza Systems objects are: (1) a trademark search report produced by Taza Systems in discovery; (2) screen shots from the websites of various restaurants; (3) an article written by Taza Systems' expert; (4) screen shots from Taza Systems' own website for its TAZA restaurant; and (5) print outs from on-line dictionaries.   The first two items purport to demonstrate that third parties use the word "taza" in the name of their restaurant.   The third item purports to attack the validity of Taza Systems' expert's survey evidence on the ground that he violated his own standards for conducting a good survey.   The fourth item purports to show that

Taza Systems uses the word "taza" descriptively on its own website.  The last item purports to show the English translation of "taza", or similar foreign words, into English.  According to Taza Systems, these exhibits should be stricken from the record because they are either not authenticated and/or contain inadmissible hearsay.

As Taza21 correctly points out, if the objected to evidence could be presented at trial in a form that would be admissible, Taza Systems' objections are without merit.  FED. R. CIV. P. 56, and advisory committee note.  Each of the items to which Taza Systems has objected can be authenticated at trial.  Taza Systems' hearsay objections are not well-founded because the Court did not rely on the substance of any of the objected to evidence in ruling on the pending motion for summary judgment, with the exception of dictionary definitions, of which, as we have already explained, we are empowered to take judicial notice.  As such, Taza Systems' hearsay objections are moot.

Should the same evidence be presented at trial, Taza Systems will have a full and fair opportunity to object thereto.  However, in the context of the pending motion, we will not rule on the admissibility of evidence not relied upon.  For the foregoing reasons, Taza Systems' motion to strike is denied, without prejudice to raise the same objections at trial should the same evidence be offered at that time.

**IV.**     <u>**CONCLUSION**</u>

For the foregoing reasons, we grant Taza Systems' summary judgment motion as to

Taza21's counterclaims, but deny it as to the claim for infringement.  We also deny its motion to

strike Taza21's exhibits and its motion <u>in</u> <u>limine</u> to exclude Mr. Pritchard's expert report.  An

appropriate order will be filed contemporaneously with this opinion.


<u>s/ David Steawrt Cercone</u>
David Stewart Cercone
United States District Judge

cc:     Edward T. Saadi, Esquire
        Eric G. Soller, Esquire

        (*Via CM/ECF Electronic Mail*)